EMANUEL COOK, APPELLEE, V. MADALINE COOK, APPELLANT.

3 N. W. (2d) 450

FILED APRIL 17, 1942. No. 31264.

*Anson H. Bigelow,* for appellant.

*Shrier & Shrier,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

In the district court for Douglas county plaintiff was granted an absolute divorce from the defendant, who was found guilty of adultery. Plaintiff was also awarded the care, control, maintenance and education of the six minor children. One other child, 20 years of age, was married and lived at home. The defendant was granted $75 permanent alimony, payable $7.50 a month, and attorney fees to her counsel. She prosecutes an appeal to this court.

The record is voluminous, and we shall set forth in this opinion only such evidence as we deem necessary for a consideration of the case, in so far as the charge of adultery is concerned.

Plaintiff and defendant were married in 1920. At the time he was 23 years of age and she a girl of 17. To this marriage were born seven children, and the marriage relation lasted for 22 years. Plaintiff started in life as a laborer and for 17 years last past has been employed as a fireman in the city of Omaha, with an earning capacity of $140 a month.

The charge of adultery centers around one Orville Brooks, who first went out with the defendant in December of 1938. In all he testified to some 30 "dates" he had with her. Before testifying, he was admonished by the court that he could stand on his constitutional right and not testify, if any of his testimony would incriminate him. He asserted that he was prepared to testify. On or about January 2, 1939, he went with the defendant to a house on Twenty-third street between Clark and Seward in Omaha, where he stayed with her for two or three hours, and he testified that he had sexual intercourse with her. He further testified that he was with her in a cab; they started talking about different things. "We were going away together, with each other. And we kissed about a couple of times in the cab. She was going to run off and leave her children." Subsequently, in February, 1939, they were together in a house known as the Parker house, and on the third night, he testified, he took her to a room in the house and had sexual intercourse with

her. He further testified that on one other occasion he took her to his apartment for the same purpose, and at another time she sent a cab for him; he arrived at her house, where she was clothed in house pajamas, and "she had me button them up her back." On some of these occasions he furnished liquor for both of them.

With reference to the incident at the Parker house, his mother called the husband of the defendant, telling him that her son was a parolee and was with the plaintiff's wife, and she desired to break up this relationship. The plaintiff proceeded to the Parker house, saw his wife alight from a cab and go into the house. He subsequently knocked at the door; she had hidden from him; Brooks was not there. The plaintiff did not inquire about his wife but asked about Brooks, who arrived after plaintiff had left. On occasions mentioned, it appears that the defendant would send taxicabs for Brooks.

The corroborating evidence consists of the testimony of a taxicab driver, that he delivered a message from the defendant to Brooks, to meet her, and that he was to take Brooks to 2734 Caldwell street; that he picked up both Brooks and defendant in his cab from that address at from 11 to 11:30 p. m. Brooks' testimony is further corroborated by the testimony of defendant's witness, Grant Parker, who resides at the address above mentioned, where Brooks introduced to him and others the defendant as Mary Smith, she making no protest, and that she was hidden in the kitchen when her husband called.

There appears in the record a letter, written to one Harry Denton, living close to the residence of plaintiff and defendant, in which she wrote: "Wait at home tonight for me about 8 o'clock. But call me please anyway no one is home but me so I'll be listening." A police officer, a member of the morals squad, testified that he and another officer one night parked a car some distance ahead of defendant; that she solicited a man; they put out the lights on their car, and she approached and solicited them; that she was placed

under arrest and charged with soliciting and fined one dollar and costs, and the fine was remitted.

Defendant in her testimony denied the charges and denied relationship of any kind with Brooks, but charged and insinuated that her husband was morally indiscreet. Her testimony with reference to her relations with Brooks, her presence at the Parker house and her conduct generally is not impressive. She had, of course, at one time been a good mother, but by her own conduct she brought about the disgraceful and sordid situations described in the record and her present physical condition. The record does not disclose that plaintiff was to blame in any respect for these conditions. With reference to his financial circumstances, he was indebted to the extent of some $1,750, and these debts had to be paid out of his wages. In addition thereto, he was awarded the custody of the six minor children. We deem it unnecessary to detail other evidence as to the relationship of these two parties during their married life.

The defendant produced the testimony of medical experts as to her present physical condition, disclosing that she is badly in need of medical attention. She asserts that such condition was brought about by the marriage relation and the number of children she had borne and raised. She bases her case almost entirely on the proposition that it is the duty of the plaintiff to obtain and pay for her physical rehabilitation, to enable her to reestablish herself as a loving wife and mother. We conclude that such request is without merit under the circumstances.

This court has held: "In an action for a divorce on the ground of adultery, it is not always necessary to show the overt act; the charge may be sufficiently proved by the evidence of such circumstances as will lead a just and reasonable man's mind to the conclusion of guilt." *Stackhouse v. Stackhouse,* 88 Neb. 184, 129 N. W. 257.

Upon a reading of this record, we believe it is sufficiently proved thereby as to lead to the conclusion arrived at by the trial judge in rendering a decree in favor of the plaintiff and in finding the defendant guilty of adultery.

In the present state of the record, we are driven to the conclusion that the judgment and decree of the trial court should be and are hereby

AFFIRMED.