IRENE GOODMAN, APPELLANT, V. CHARLES H. GOODMAN, APPELLEE.

97 N. W. 2d 336

Filed July 3, 1959. No. 34580.

*Fitle & Stehno, Eugene L. Wohlmer,* and *Gerald E. Kiltz,* for appellant.

*Peter E. Marchetti,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is a divorce action. The action went to trial on allegations of extreme cruelty, a general denial by defendant as to those allegations, and a cross-petition by defendant seeking a divorce from plaintiff. At the close of plaintiff's case the defendant announced that he would offer no evidence and moved to dismiss his cross-petition without prejudice. Plaintiff made no objection. The court sustained the motion. The court then sustained a motion of defendant to dismiss plaintiff's petition.

Plaintiff appeals. The cause is here for trial de novo. We affirm the judgment of the trial court.

We have repeatedly stated the rules of law that apply, and do so again: It is provided by section 42-335, R. R. S. 1943, that no decree of divorce and of the nullity of a marriage shall be made solely on the declarations, confessions, or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose. This statute means that corroborative evidence is required of the acts or conduct asserted as grounds for a divorce. It is impossible to lay down any general rule as to the degree of corroboration required in a divorce action, as each case must be decided on its own facts and circumstances. See Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321.

Plaintiff pleaded acts which she alleged, separately and collectively, constitute extreme cruelty. We relate the evidence as to each in the order the acts were pleaded.

Plaintiff was 52 years of age at the time of the marriage. At the time here involved she was regularly employed at general duty and nursing in a hospital. She had been married twice before. She had six children by the first marriage, only one of whom need be particularly mentioned here—a son, Philip, 24 years of age at the time of the trial. We refer to him as Philip. Philip is married. His wife's name is Joan. We refer to her by that name. There is also mentioned in the record a niece of the defendant named Frieda. She lived in the home of the parties almost a year. She paid for her board and room. Those payments went to pay for groceries and family expenses. Frieda is not otherwise involved in this situation.

Defendant was 55 years of age at the time of the marriage in January 1957. Joan was living with the plaintiff at that time and continued to do so until sometime in February. Philip was then absent as a member of the armed forces. Joan next lived in St. Joseph, Missouri. Joan again lived in the family home during May and June 1957, and a few days after Thanksgiving. After that Joan and Philip lived in an apartment in the vicinity. They came to the family home to visit, and Joan came once a week to do washing. Philip came to visit on occasion also. Philip and Joan separated in June 1958, and a divorce action is pending. At the time of the trial Philip was living with his mother in the home of the parties. During the times that Joan was at the family home and the times when both Joan and Philip were there, there was no payments made, and no evidence of payments requested, for their care.

Plaintiff's first alleged ground of cruelty is that defendant allowed members of the negro race to come upon the premises to purchase produce and borrow money. Defendant was a laborer in a mill. Fellow employees were negroes. Defendant had a business of buying eggs by the crate, and retailing them. He bought chickens, and dressed and sold them. He loaned money to some

of the negroes. Plaintiff testified at one time at 1:30 at night some negroes came to borrow money, and disturbed plaintiff's sleep. She testified the callers were drunk, but on redirect examination clearly disclosed that was an assumption on her part. Plaintiff testified she wanted the coming of negroes to the premises stopped. The only corroboration of the above is the evidence of Philip that on two occasions, once in the afternoon and once after dark, negroes came to the premises and transacted business with the defendant. Manifestly this evidence is insufficient, as a matter of fact or law, to constitute cruelty.

The second alleged ground of cruelty is that defendant regularly and violently argued with plaintiff regarding the children, failed to allow them to come upon the premises, and struck Philip on July 4, 1958, "without cause or provocation." The record is convincing that there was no particular discord about either Philip or Joan until sometime in the spring or summer of 1958. There is some testimony of arguments but no effort to reduce them to a statement of fact or corroborate them except as to one instance. Plaintiff drove her car to St. Joseph and brought Joan and her baby to the home. Plaintiff testified that defendant became quite angry because she did so. Joan testified that when she arrived at the home at breakfast time, defendant came to the table, referred to the plaintiff as the "little woman" and expressed surprise that Joan had returned. Defendant then ate his breakfast. Such is the corroboration of the quarrel at that time.

There is evidence also that defendant objected and quarrelled with plaintiff about Joan doing her washing at the home. The incident testified to must have occurred after Joan and Philip were living separately from the home of the parties. Plaintiff in testifying as to this one event said that the quarrel arose after defendant took Joan home.

There is also corroborated evidence that at one time

plaintiff and Joan were in the car ready to leave the home of the parties. Defendant became quite angry and apparently undertook to prevent their leaving by holding onto the car. The cause of this situation was an assertion by defendant, as testified to, that plaintiff had to stop giving money, groceries, and other things to Joan and Philip. The truth of the charge that plaintiff was doing that is not denied. We refer to this incident in connection with the next charge of cruelty.

There is evidence that defendant objected to Philip "sponging" off of plaintiff and defendant. In early May 1958, Philip brought his car to the premises of the parties and began to wash it. Defendant ordered Philip to leave the premises and not return. Philip left. On the morning of July 4, 1958, Philip came to the home to see a sister who was there. Defendant was home. Defendant ordered Philip to leave. A fight ensued. Philip testified that he was victor. Philip departed after the fight.

Plaintiff offered as corroboration of the quarrels the testimony of a neighbor. She testified that on occasions when Philip and Joan were at the home of the parties the witness heard loud voices "quarreling like" coming from the house. She was not asked to identify any of the voices. It is not shown that the defendant was even present on those occasions.

We find no corroborated evidence that defendant ordered Joan to stay away from the premises.

Plaintiff testified that these events made her very nervous and when she heard about the fight on July 4, 1958, it made her "very nervous all that day." She testified that she was under a doctor's care for nervousness caused by the acts of the defendant. However, she also testified that she was going through the menopause and had been under a doctor's care for nervousness since June 1957, a date long prior to the acts of the defendant about which she complained. The above is the sole evidence offered as to any effect upon plain-

tiff's health. It is entirely uncorroborated.

The next allegation is that the defendant regularly cursed and used profane language from the date of the marriage. There are general statements that he did it several times. It is corroborated that he used profane and foul language at the time of the car incident involving plaintiff and Joan. It does not appear that the language was directed at the plaintiff. Similar language was used when defendant became angry in a telephone conversation with some third party. Joan testified that at times when this language was used the plaintiff was not present. It appears also that Philip used profanity about the home. Plaintiff testified that on occasion when she was angry with defendant she would also use profanity, being perhaps a bit more selective in the language used. We find no evidence that the use of such language had any adverse effect on plaintiff.

This question was before the court in Shuster v. Shuster, 3 Neb. (Unoff.) 610, 92 N. W. 203, where the trial court denied a divorce. The denial was affirmed in a Commissioner's opinion. We adopt and approve the language there used: "While habitual use of rough and vile language may amount to cause of divorce, much must depend upon the character of the parties, their situation in life, and the degree of cultivation and refinement they exhibit. The marriage relation is designed to continue as long as both the parties shall live, and is not to be dissolved for light or trivial causes. * * * Language which would so wound the sensibilities of a woman of cultivation and refinement as to amount to cruelty, might occasion little or no discomfort to one accustomed to rougher surroundings. Where the testimony adduced in a suit for divorce tends to show that each party was addicted to the use of profane language about the home and in addressing the other, the court is certainly justified in refusing to grant a divorce to either on that ground. Mere rudeness of language is not of necessity extreme cruelty. * * * in order to

constitute extreme cruelty it must have the effect of so grievously wounding the feelings or destroying the peace of mind of the plaintiff as to impair health or utterly destroy the legitimate ends of matrimony. Where both parties habitually indulge in such language toward each other, they can scarcely claim that their sensibilities have been unduly disturbed."

The final allegation which plaintiff claims was proven is that defendant threatened to cause the plaintiff serious bodily harm on July 5, 1958. Plaintiff testified that defendant threatened to strike her, made no effort to do so, and never did do so at any time. The evidence is entirely uncorroborated.

Plaintiff testified that when she returned home on July 5, 1958, she saw a piece of iron lying by the bed. She picked it up and put it under the mattress where it remained until she produced it at the trial. It appears to be a rusty tire iron. She does not testify as to who put the iron by the bed, nor how it got there. She does not connect the defendant with it in any way. Save for the fact that she produced the iron, the evidence is without corroboration.

We have refrained, up to this point, from mentioning the final contention of the plaintiff in this case.

Plaintiff's sixth allegation of extreme cruelty was as follows: "6. By making accusations that were intended and did, in fact, infer that the plaintiff had violated her marriage vows regarding fidelity to the defendant in the month of October, 1957 when said inferred fact was, in truth and in fact, false." She offered no evidence to sustain the allegation. Her counsel prevented cross-examination of the plaintiff as to that allegation. It was abandoned at the trial and is not urged here.

Defendant in his cross-petition alleged among other things that: "Plaintiff after said marriage has exhibited an abnormal tendency to be unduly familiar with other men, in particular on the 19th day of November, 1957, with one Luther, whose full and real name is unknown

to the defendant, and another individual whose name is unknown to the defendant, in the home of the parties, indulged in excessive familiarity with both of said men; that throughout said marriage, said plaintiff repeatedly engaged in intimacies and undue familiarity with her son Philip Fewins, permitted said son to take liberties with her person and participating in an unnatural relationship with said son, inconsistent with the conventional maternal relationship between mother and son to such an extent that the defendant forbid said Philip Fewins from coming upon the premises occupied by the parties as a home; * * * plaintiff has subjected the defendant to ridicule concerning defendant's ability in marital relations by comparing said abilities unfavorably with that of her son, Phil Fewins; * * *."

We have held: "A party may at any time invoke the language of the pleading of his adversary on which the case is tried, on a particular issue, as rendering certain facts indisputable. * * * An admission made in a pleading on which the trial is had is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it and is therefore a limitation of the issues." Johns v. Carr, 167 Neb. 545, 93 N. W. 2d 831.

So it stands here that the defendant admits making the charge. It was not necessary to offer it in evidence. The admission does not go beyond the language of the pleading.

The question is: What is the effect of the admission?

Plaintiff relies largely on McNamara v. McNamara, 93 Neb. 190, 139 N. W. 1045, and on the following language in the opinion: "* * * it has been held by courts of high authority that to falsely and maliciously charge a virtuous woman with crimes of this character, *even if those charges are contained in the pleading and alleged* as a matter of defense, if wholly unsupported by the evidence, would be regarded by the court as cruelty, and as aggravating other charges of cruelty

relied upon as ground for divorce." The statement cites no authority and is obviously dictum.

In the McNamara care plaintiff sued her husband for divorce on grounds of extreme cruelty. The cause was tried, resulting in a decree for the plaintiff. On appeal here it was reversed and remanded for further proceedings. In the meantime defendant wrote the letter involved making false and malicious charges against the wife. Before the second trial plaintiff amended her petition, charged the writing of the letter as a further act of cruelty, and alleged the publication of the charges. There an issue of that fact and its impact as an act of cruelty was alleged and proven. No such issue was presented here. In fact here plaintiff did allege in part the making of the false allegation to which defendant referred. She failed to produce evidence of that fact and prevented cross-examination about it.

The question, then, is: Did a charge by the defendant in his cross-petition, in and of itself, constitute an act of extreme cruelty which requires the granting of a divorce, where there was no allegation that it constituted cruelty and where there is neither allegation nor proof of any of the results which we have held must flow from an act before it can be held to be extreme cruelty?

It is manifest that this pleading, filed after the parties had separated and a divorce action was pending, had no possible cause or effect on the issues presented.

We need not explore the other questions that would arise, such as the rule requiring corroboration, and collusive pleadings to enable a party to secure a divorce decree, were we to hold otherwise on the matter above discussed.

The plaintiff seeks an allowance of attorneys' fees here. The request is denied.

All costs in this court and the trial court are taxed to the plaintiff.

The judgment of the trial court is affirmed.

AFFIRMED.