GLORIA RUTH IVINS, APPELLANT AND CROSS-APPELLEE, V. JAMES RUSH IVINS, APPELLEE AND CROSS-APPELLANT.

108 N. W. 2d 99

Filed March 17, 1961. No. 34869.

*William A. Stewart* and *Bevin B. Bump*, for appellant.

*W. E. Mumby* and *Stubbs & Metz*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

YEAGER, J.
This is an action for divorce instituted by Gloria Ruth

Ivins, plaintiff and appellant, against James Rush Ivins, defendant and appellee. A trial was had to the court after which a decree was rendered granting a divorce to the defendant. Also custody of the two children of the parties was granted to the defendant. An attorney's fee, in addition to a previous fee of $400, was allowed to the plaintiff in the amount of $750. Also the plaintiff was awarded an automobile and a judgment in the amount of $145. Motion for new trial was duly filed by plaintiff. This motion was overruled. From that portion of the decree granting a divorce and custody of the children to the defendant the plaintiff has appealed. The defendant asserts in his brief that the appeal was taken from the order overruling the motion for new trial only, and not from the decree. This is an erroneous statement. The notice of appeal states that the appeal is "from the decision rendered herein, and from the order overruling the motion for new trial." From the portion allowing a fee for the attorney for plaintiff a cross-appeal has been taken by the defendant.

The plaintiff has set forth numerous assignments of error as grounds for reversal, but from the record it appears that but one question is presented for determination. The question is that of whether or not on the evidence contained in the record, and applicable law, the decree rendered has been sustained.

The other assignments relate to interim procedural rulings which have not come to this court in such manner as to permit of their review.

After these rulings were made the plaintiff, without reservation, answered over and the case was tried on its merits. This amounted to a waiver of objection to the rulings previously made. The controlling principle is the following: "Where a party answers after an adverse ruling on his motion or demurrer, and goes to trial on the merits of an issue he has elected to join, he waives

error, if any, in such ruling." Dinkel v. Hagedorn, 156 Neb. 419, 56 N. W. 2d 464.

It is urged that the court erred in rulings on objections to the testimony of Harley E. McWilliams which came into the record by deposition taken in California. Testimony of this witness is quoted in the statement of the case in the brief, however it is not pointed out in the argument what part or parts are claimed to be improper. This of course must be disregarded.

By the petition filed herein the plaintiff alleged, to the extent necessary to state here, that the parties were married on June 15, 1947; that the parties were residents of Crawford, Dawes County, Nebraska; that two sons were born of the marriage, one, Orville Rush Ivins, on February 10, 1950, and the other, James Joel Ivins, on August 5, 1952; and that the defendant had been guilty of extreme cruelty which amounted to grounds for divorce from the defendant. By the prayer of the petition she asked for a divorce, custody of the children, temporary and permanent alimony, support for the children, and costs of suit.

A detailed statement of the charges of cruelty against the defendant is not required here since on this appeal the question of the propriety of the denial of a decree of divorce to plaintiff is not presented. The question of whether or not a decree of divorce should have been granted to the defendant with custody of the children is the basic one here for consideration.

The defendant filed an answer to the petition in which, to the extent necessary to state here, he denied the charges of cruelty made against him by the plaintiff.

In addition to the answer he filed a cross-petition on the basis of which he prayed for a divorce, custody of the children, and that the plaintiff be denied alimony and attorney's fees. By the third paragraph of the cross-petition he charged that the plaintiff had been guilty of extreme cruelty toward him which entitled him to a divorce. The charges in this respect were in per-

tinent substance as follows: That plaintiff was guilty of extreme cruelty in that for several years she exhibited an abnormal tendency to be unduly familiar with other men; that she accompanied other men on secret trips in and around Crawford, Nebraska; that she accepted the attention of various men in the home of the parties during the absence of the defendant and at other places to the extent that her conduct in this respect has become a matter of common knowledge and repute; and that she has willfully failed and refused so to conduct herself as to promote a happy family life, all of which have destroyed the ends and objects of matrimony.

By the fourth paragraph of the cross-petition he charged that he had been informed and verily believed that plaintiff, during the past several years, had committed adultery with several men. The name of no man was set forth.

The plaintiff by appropriate pleading denied the allegations of cruelty and of adultery. In addition she pleaded that if she had been guilty of extreme cruelty it had been condoned.

Before proceeding to consider the evidence relating to the charges of cruelty made against the plaintiff, it is pointed out that any contention made that the charges, if proved, were condoned is on the record baseless. This is so because the record without controversy makes it clear that the defendant had no knowledge of any of the misdeeds charged against her until after the separation of the parties and the commencement of this action. It is also made clear by all witnesses including the defendant that the plaintiff took good care of the children and treated them properly and that it was not until after the action was instituted that the defendant concluded that she was not a proper person to be entrusted with their custody and control. As to this there is likewise no controversy.

To sustain the charges made against the plaintiff eight

witnesses were called by the defendant besides the defendant himself. Two of these gave no information of significance at all. They were John Kurtz and Gordon Moody.

One William Hudson testified that while in attendance at an affair at Crawford he and plaintiff sat in an automobile and engaged in what might be called an amorous interchange, but that no adulterous act was involved. This was admitted by plaintiff but she denied that she made any advances. His version was to the contrary. There were no witnesses to the incident.

Harold Hunt testified that one evening the plaintiff was sitting in her automobile when one Loy Pierce came along in another automobile. She sounded her automobile horn and drove away. His assumption was that she followed Pierce away.

Hope Reece testified that she saw Loy Pierce at the Ivins home many times, sometimes as often as three times a week. She said that on some of the occasions the defendant was also there.

Harold Glendy testified that on an occasion in 1955 at night when he and three other persons were returning home he observed a parked automobile which he passed. He identified two persons in the parked automobile as the plaintiff and Harley E. McWilliams. He said he saw the two rise up in the front seat. None of the other occupants of his automobile gave testimony on the trial.

On September 29, 1959, the deposition of Harley E. McWilliams was taken in Los Angeles, California. It was read in evidence at the trial. He lived in Crawford, Nebraska, and had known the parties to this case from 1946 to 1958. He had visited in their home and visited and associated with them socially. He testified that on occasions there was kissing and fondling between him and the plaintiff which extended over a period of between 1 and 2 years. His testimony indicates that he was the person in the automobile with plaintiff in

the incident described by Harold Glendy. He testified that on one occasion he went to the home of the plaintiff between 10 p.m. and midnight where he remained for several hours. He said that so far as he knew the Ivins children were in bed upstairs. He said that on that occasion, and on no other occasion, he had sexual intercourse with the plaintiff. He did not even approximately know the date. He said that as near as he could tell it was in the fall of 1956, in "their living room, or den, wherever they had a fire place." He gave no information the effect of which was to confirm his statement and none which could lead to the discovery of incidental facts the effect of which could lead to either confirmation or denial. Insofar as the record here is concerned the witness never disclosed this information to anyone until he disclosed it to the defendant when he called to see McWilliams in California in the summer of 1959.

The remaining witness is Lillie Sikorski, a married woman, who had lived in Crawford for 12 years. She came to the United States from Germany in 1947. She was married to Ralph Sikorski, a rancher, after coming to this country. At the time of the trial she was 53 years of age. She had been twice married and divorced before coming to this country. She became acquainted with the parties about 7 years before the trial. The homes of the two families were directly across the street from each other. For 5 years she cleaned house and did what is known as babysitting for the plaintiff and was often in the Ivins home. According to her testimony during all the time she was a close friend and confidant of the plaintiff. She also testified to certain incidents of social association away from the home. Without going into detail, she gave testimony of a number of amorous incidents between the plaintiff and Harley E. McWilliams and plaintiff and Loy Pierce. She also testified as to incidents whereby by telephone calls made by her and by the older son of the Ivins contacts

were arranged between the plaintiff and these men. She also testified to incidents when the plaintiff was alone with these men. She never however testified to any act or circumstance from which an inference could flow that an adulterous act had been committed as distinguished from mere opportunity. She gave much evidence such as has been characterized here but no good purpose would be served by setting forth its details herein. What has been reviewed, it is considered, sufficiently presents the basis for determination first of the question of whether or not the court erred in granting a decree on the ground of adultery, and if it did, whether or not on hearing de novo in this court a divorce should be granted to defendant on the ground of cruelty.

The rule as to the character of the hearing to be had here is that on appeal to this court in a divorce action the cause is tried de novo. See, Pestel v. Pestel, 158 Neb. 611, 64 N. W. 2d 299; Birth v. Birth, 165 Neb. 11, 84 N. W. 2d 204.

A general rule in the determination of whether or not a ground for divorce has been established is that acts asserted as grounds for divorce must be corroborated. Nuss v. Nuss, 148 Neb. 417, 27 N. W. 2d 624; Pestel v. Pestel, *supra;* Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321; Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368; O'Neill v. O'Neill, 164 Neb. 674, 83 N. W. 2d 92, 66 A. L. R. 2d 875; Goodman v. Goodman, 168 Neb. 841, 97 N. W. 2d 336.

Adultery, which is a ground for divorce, is a criminal offense the penalty for which is imprisonment in the county jail not exceeding 1 year. In the statutes as applied to a married woman it is defined as follows: "If (1) any married woman shall hereafter commit adultery, or desert her husband and live and cohabit with another man, * * * every person so offending shall upon conviction thereof be imprisoned in the county jail not exceeding one year." § 28-902, R. R. S. 1943.

It requires no citation of authority to say that before

one so charged criminally could be convicted of the offense the evidence would have to be sufficient to prove guilt beyond a reasonable doubt.

It is true that it has not been said that this same degree of proof is required where adultery has been charged as a ground for divorce. It has already been pointed out however that proof of an alleged ground of divorce must be corroborated. The cases already cited make it clear that the rule applies where the alleged ground is adultery. There is however no rule whereby to measure the amount of corroboration required but each case must be decided upon its own facts and circumstances. See, Peterson v. Peterson, 153 Neb. 727, 46 N. W. 2d 126; Spray v. Spray, 156 Neb. 774, 57 N. W. 2d 926; Roberts v. Roberts, 157 Neb. 163, 59 N. W. 2d 175; Sewell v. Sewell, 160 Neb. 173, 69 N. W. 2d 549.

The general rule as to the weight of evidence necessary to sustain a charge of adultery as a ground for divorce was stated as follows in James v. James, 29 Neb. 533, 45 N. W. 777: "The charge of adultery is a serious one, and it should be clearly established by competent testimony before a decree of divorce should be granted on that ground." See, also, Sewell v. Sewell, *supra*.

It is true that it is not necessary to show an overt act of adultery but the charge of adultery must be proved by evidence of such circumstances as will lead the mind of a just and reasonable person to the conclusion of guilt. Stackhouse v. Stackhouse, 88 Neb. 184, 129 N. W. 257; Cook v. Cook, 141 Neb. 294, 3 N. W. 2d 450.

The question of whether or not the plaintiff has been proved guilty of adultery by the weight of evidence exacted by these rules must depend for the most part by reference to the testimony of McWilliams and Sikorski, particularly as to content and credibility.

McWilliams testified to a single act. In this he said he participated. There was no fact or circumstance testified to by him which pointed to any other fact or

circumstance which could be regarded as corroboration. His testimony was so unrelated to any testimony of others as to time or incidents that the testimony of others could not be regarded as corroboration of his testimony. In addition to this, as he was the person who claims to have participated with the plaintiff in the act, his testimony was subject to caution and careful scrutiny.

This court said in Sewell v. Sewell, *supra:* "The voluntary testimony of an alleged paramour that he had intimate relations with a wife whose husband is seeking a divorce on the ground of adultery should be received with caution and carefully scrutinized." In the opinion in that case is contained a characterization of a man, and an appropriate attitude to be taken toward his testimony, who testifies that he has been guilty of conduct like that claimed by McWilliams in this case. That characterization will not be repeated here, but no reason becomes apparent why it should not be applicable to McWilliams.

In the light of these observations as to this testimony and the controlling legal rules it may not well be said that the charge of adultery with McWilliams has been sustained. It was in no wise corroborated.

Coming now to the testimony of the witness Sikorski, it is quite true that she testified, truthfully or falsely, to numerous incidents of indiscretion covering a period of years on the part of the plaintiff which were not comportable with a proper attitude toward harmony in her marriage relation. Her testimony however at no point referred to any act or condition or physical appearance of anything which was in proof of the commission of an act or acts of adultery as distinguished from suspicion. In addition to the things which she said that she observed she testified that on one occasion the plaintiff told her that she was afraid that she was pregnant by a man not her husband. All of the matters reflecting adversely upon the plaintiff were denied by her.

This witness breathed no word of all of this that she

claims as true to the defendant. She, according to her testimony, was a conspirator with plaintiff to bring about claimed indiscreet contacts of plaintiff with named men. She gave no information to anyone except to her husband. Whether she informed her husband before or after the commencement of this action is not made clear, but it is clear that it was not communicated to the defendant until after the action was commenced. The reason for the change of allegiance has not been made apparent by the record. Expediency is hinted in this instance as well as in the case of McWilliams, but there is nothing in the record to justify a safe conclusion that this was true. The very fact however that there was such a radical change of attitude of friendly allegiance must necessarily cast a cloud upon the veracity of the testimony given on the trial in this case.

The conclusion reached is that there has been a failure of sufficient proof to sustain the charge of adultery contained in the cross-petition. There is a failure of substantial corroboration of this charge.

As already pointed out an action for divorce is triable de novo in this court. Without restating what has already been said about the evidence relating to the conduct of the plaintiff and without elaborating thereon it may be said that if the trial court believed the testimony of the witnesses for the defendant it could have found that the plaintiff had been guilty of extreme cruelty which was sufficient to destroy the existing marriage relationship between the parties. It could have likewise found that there had been corroboration. It is obvious that the court did so believe.

Having heard the witnesses' testimony and having observed their demeanor it had the right to believe them. In Pestel v. Pestel, *supra*, this court said: "A divorce case is tried de novo in this court, under the rule that where the evidence is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court saw and

heard the witnesses and accepted one version of the facts over the other." See, also, Wakefield v. Wakefield, 157 Neb. 611, 61 N. W. 2d 208; Schlueter v. Schlueter, 158 Neb. 233, 62 N. W. 2d 871.

The conclusion reached therefore is that on the record presented a decree of divorce should be granted to the defendant from the plaintiff on the ground of extreme cruelty.

As to the custody of children this court in Gorsuch v. Gorsuch, on motion for rehearing, 143 Neb. 578, 11 N. W. 2d 456, said: "The proper rule in a divorce case, where the custody of minor children is involved, is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents."

In application of the foregoing rule this court said in Speck v. Speck, 164 Neb. 506, 82 N. W. 2d 540: "In awarding the custody of minor children of tender years under the foregoing rule, the best interests of the children usually require that they be given into the care and custody of the mother if she is a suitable and fit person." See, also, Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509; Lichtenberg v. Lichtenberg, 154 Neb. 278, 47 N. W. 2d 575; Cowan v. Cowan, 160 Neb. 74, 69 N. W. 2d 300.

The evidence in this record stands undisputed, even by the defendant himself, that the plaintiff was regarded as a fit and proper person to have charge of and the care of the children of the parties at all times prior to the commencement of the action for divorce. Also there is an absence of evidence that thereafter she was guilty of any conduct which would render her unfit. The charge of unfitness made by the defendant was based solely on claimed information secured after the commencement of the divorce action. While it is of no controlling significance the children, as the record indicates, were by mutual agreement allowed to remain

with the plaintiff during the pendency of the case in the district court.

In the light of the disclosed facts and the controlling legal principles it appears that the custody of the children should be awarded to the plaintiff subject of course to the further order of the court if conditions should change.

Reasonably there should be an award to plaintiff for the support and maintenance of the children and also an award to plaintiff as alimony and division of property. The fact that a decree of divorce may be granted to a husband on grounds other than adultery does not bar the wife from the right to alimony and division of property. See, § 42-318, R. R. S. 1943; Phillips v. Phillips, 135 Neb. 313, 281 N. W. 22; Malone v. Malone, 163 Neb. 517, 80 N. W. 2d 294. The fixing of the amount of alimony rests, in each case, within the sound discretion of the court. See Holmes v. Holmes, 152 Neb. 556, 41 N. W. 2d 919.

This court said in Kinch v. Kinch, 168 Neb. 110, 95 N. W. 2d 319: "In determining the question of alimony or division of property as between the parties the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto. From these elements and all other relevant facts and circumstances, the court will determine the rights of the parties and make an award that is equitable and just."

Facts not disclosed by the record make difficult the solution of the problem of what would be a proper award of alimony and division of property and of support for the children. There is information as to the value of the property of the defendant but there is nothing authentic as to how or when it was accumulated.

An appraisal appearing in the record discloses that the value of the property at the time of trial was $164,725. Other information discloses that in 1957 he had salaries and bonuses amounting to $10,560. In 1958 his salaries were $11,300 and in 1959 they were $13,800. Also it is disclosed that in 1958 he received as bonuses and dividends $4,260 and in 1959, $13,065 from like sources.

It appears from this that as a minimum, even though it should be true that none of the property was accumulated during the married life of the parties, in view of the award of custody of the children to the plaintiff, the plaintiff should receive as alimony and distribution of property, $25,000. It also appears that an award for child support should be made in the amount of $300 a month until the older child shall attain his majority and then continue in the amount of $150 a month until the younger shall attain his majority. This award of child support should of course be subject to the further order of the court in the event of changed conditions.

Since by this opinion the decree on the ground of adultery is not being allowed to stand the award of an attorney's fee by the district court for plaintiff's attorney was not improper. There is nothing to indicate that under the circumstances it was excessive. The cross-appeal in relation thereto may not be sustained.

The decree granting the defendant a divorce on the ground of adultery and awarding him the custody of the children is reversed. That portion of the decree awarding the plaintiff the automobile, $145, and the attorney's fee of $750 is affirmed. This attorney's fee of $750 was in addition to a temporary fee which was allowed. The allowance of the temporary fee is also

affirmed. The cause is remanded to the district court with directions to render decree granting the defendant a divorce on the ground of extreme cruelty; awarding the custody of the children of the parties to the plaintiff; and requiring the defendant to pay to her for their support and maintenance $300 a month until the older shall attain his majority, and thereafter $150 a month until the other shall attain his majority, subject to the further order of the court. As to custody the defendant shall have the right to visit the children at all reasonable times and the defendant shall have the right to have the children visit and be with him over reasonable periods of time when it will not interfere with their education. If agreement may not be reached in this matter either party may submit the matter for determination to the district court. It shall be adjudged that the defendant pay to plaintiff as alimony and division of property $25,000, of which $5,000 shall be due and payable on issuance of mandate herein, and the balance shall become payable in the amount of $5,000 annually thereafter until the total amount shall have been paid. The plaintiff is awarded for the services of her attorney in this court a fee in the amount of $750.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

WENKE, J., not participating.