MARILYN J. MISLIVEC, APPELLANT, v. MELVIN J. MISLIVEC, APPELLEE.

109 N. W. 2d 393

Filed June 2, 1961. No. 34927.

*Shotwell, Marchetti & Samson,* for appellant.

*Burbridge & Burbridge,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action by Marilyn J. Mislivec, plaintiff-appellant, hereinafter called the plaintiff, praying for an absolute divorce on the ground of extreme cruelty, temporary and permanent support money and alimony, and that the court decree the title to the real estate and all personal property in the plaintiff. The answer was a general denial coupled with a cross-petition which alleges that the plaintiff was guilty of extreme cruelty towards the defendant. It prays for an absolute divorce, custody of the children, and an accounting of the property of the parties.

The trial, beginning in October 1959, was not concluded until March 1960. On March 31, 1960, a decree was entered finding the plaintiff entitled to an absolute divorce and custody of the three children with reasonable visitation allowed the defendant. The court directed the defendant to pay for the support of each minor child the sum of $9 a week; and found the title to the parties' jointly-owned home should remain as then owned. The personal property at the home was given to the plaintiff except the property that was used by the defendant in caring for lawns. The court directed the plaintiff to pay her attorneys $500 and the defendant to pay his attorneys $500, and directed each party to pay his own costs.

Plaintiff filed a motion for new trial and upon its being overruled appealed to this court. Defendant did not appeal on his cross-petition. The plaintiff assigns 17 errors of the court below most of which, in view of our disposition of the case, will not be discussed. She urges that the support allowed for the children was inadequate. She further urges that the court erred in failing to award suitable permanent alimony; in failing to dispose of the jointly-owned real estate, and to award the real estate to the plaintiff, and in failing to provide for the payment of the taxes thereon; in assessing court costs against the plaintiff; and in requiring her to pay her own attorneys and in not assessing her attorney's fees to defendant. Defendant submits questions in the nature of a cross-appeal and complains that the court granted the decree of divorce when the evidence failed to make a case provided by statute, and that the court granted the divorce when condonation was complete and there was a voluntary resumption of marital relations.

This being a divorce case and the defendant below having submitted questions in the nature of a cross-appeal objecting to the granting of the divorce and urging that condonation was complete, it is necessary for these questions to be reviewed by this court, and for that purpose to consider the evidence as disclosed by the record.

It shows the date of the marriage as 1949 and the ages of the three children as follows: Diane Marie, age 7; Melvin John, Jr., almost 4; and James Frank, 15 months, at the time of bringing this suit. The parties were both quite poor at the time of their marriage. The plaintiff had saved a little money. They lived with defendant's mother for the first 3 months after which they rented their own home. Later on plaintiff's father went to Greenland and to save money they moved in with her mother. In 1952, they bought a small home for $5,000 which is presently not worth the purchase price. It was stipulated that a real estate agent would place its pres-

ent value at only $2,750. The defendant insisted it was worth more. The only other property they had consisted of an old truck, one old car, the household furniture, and some equipment for taking care of lawns. The wife had worked in all 10 years of their married life. The defendant husband was a hard worker also but his employment was such that it did not always produce adequate returns. At the time of the marriage he was hauling ashes. He also took care of lawns with the lawn equipment which plaintiff claims to be worth about $500. At times he would make $15 or $20 a day. However, he couldn't work on the lawns in rainy weather or in winter months. In the winter he worked at Rosen-Novak. His wages as shown were $65 per week. Defendant insists his money was given to the wife daily. She admits he gave her wages, as he came home at least part of the time, but claims he withheld part of it to buy and equip his cars and trucks. It would seem clear that they paid for their modest home from both of their earnings. It was modern, though very small with adequate yard room where the children could play.

With respect to her alleged grounds of cruelty the plaintiff testified that the defendant had used intoxicating liquor and on a few occasions became intoxicated and vomited; that he used vile, obscene, and indecent language frequently; and that he spent a great deal of money on automobiles and trucks and their repair concerning which they had violent arguments. Plaintiff further alleges that during the years of their marriage defendant struck her at least five times; that on two past occasions he had wrestled her about, on one of which he set her down in a chair near the window and her arm went through the window glass and was cut; that on most occasions he would not go out with her socially; that on Christmas Eve 1951, he would not go to his parents' home with her because he didn't like some cousins visiting there; that shortly before the divorce he had allowed a man named Don Roberts who

was assisting him in his work to sleep in the basement of their home and eat at least some meals there; that Don Roberts was not clean and smelled and his presence was very annoying; that the defendant had complained without cause when plaintiff kept a small baby for 3 weeks without pay; and that he accused her of going out with other men.

The defendant contends his wife complained constantly of his failure to make more money. He testified he gave her practically all he made but she was never satisfied. The trucks were used in his business. They cost very little and he repaired them and made money by trading them to advantage. His buying of the cars was likewise profitable. He admitted he drank beer and used indecent language before getting religion. But he alleged his wife had used such language; that she struck him and threw an ash tray at him; that Don Roberts had assisted him in his work; and that he was paying him only a small amount besides his board and room.

It is admitted by both parties that the defendant went to the Church of the Four Square Gospel in July 1958. He then got religion and has never since that time used liquor in any form or vile language in any way. He thereafter attended church regularly on Sunday and on many evenings during the week, and read his Bible daily. The minister of the church testified likewise. The plaintiff who had first gone with him to church was then greatly pleased with his religious attitude, but thereafter complained in that he did not go out with her socially. She admits that at least on some occasions he would not go because they had liquor at the social events she attended. It would appear he objected to her going to social affairs where men and women drank but he did not accuse her of indiscretion with other men. She complains that he went from one extreme to the other.

Obviously the defendant's early drinking and foul

language were condoned by his wife continuing to live and cohabit with him after he got religion until immediately before filing the divorce action in July 1959.

In Sewell v. Sewell, 160 Neb. 173, 69 N. W. 2d 549, this court said: "An obstacle to the success of the case of appellee is condonation by her as a result of the foregoing recited facts of any and all breaches of marital duties by appellant to the time of their separation on the day of the institution of this case. Condonation is forgiveness for the past upon the condition that the wrong will not be repeated. Condonation is complete if there is a resumption of marital relations after the breach of marital duty. It is true that condonation is not asserted as a defense in this case, but the absence of a plea of condonation does not bar its consideration and application by the court if the proof affords a proper basis for it. Wright v. Wright, 153 Neb. 18, 43 N. W. 2d 424; Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361; Pestel v. Pestel, 158 Neb. 611, 64 N. W. 2d 299, on rehearing, 159 Neb. 56, 65 N. W. 2d 233."

In view of all the evidence, plaintiff's complaints about defendant's spending for repairs for old cars and trucks and his working upon them, and the presence of Don Roberts in the home where he stayed only a few months do not appear convincing as grounds for divorce.

It is true that the plaintiff and her mother and a friend belonging to her club testified that after the separation she appeared less nervous. It would appear, however, that plaintiff had been a very heavy smoker for 5 or 6 years. Whether the separation or discontinuance of excessive use of cigarettes caused the improvement is not clear.

It is apparent the marriage of these parties was not a happy one. They both had quick tempers and engaged in violent and needless arguments. They were at all times in straitened financial circumstances which is not conducive to even tempers. Perhaps their dispositions were not compatible, but we cannot grant divorces

for incompatibility but only in accordance with statutory authority. Cizek v. Cizek, 69 Neb. 800, 99 N. W. 28, 76 Neb. 797, 107 N. W. 1012; Brown v. Brown, 130 Neb. 487, 265 N. W. 556.

The plaintiff's testimony as to substantial matters was not corroborated. The plaintiff's mother testified in her daughter's behalf. She did not speak of defendant's drinking or mention his use of vile language or substantiate any physical violence. She did testify they had many arguments and that they had financial worries. Further she stated her daughter became nervous and depressed; and that she was better after the separation when she stopped excessive smoking.

Section 42-335, R. R. S. 1943, sets out the requirement for corroboration as follows: "No decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions or admissions of the parties, but the court shall, in all cases, require other satisfactory evidence of the facts alleged in the petition for that purpose."

This court has held that corroborative evidence is required of the acts or conduct asserted as grounds for divorce. Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321. In this case the court stated: " ' "It is impossible to lay down any general rule as to the degree of corroboration required in a divorce action, as each case must be decided on its own facts and circumstances." Schlueter v. Schlueter, supra (158 Neb. 233, 62 N. W. 2d 871).' See, also, Hines v. Hines, 157 Neb. 20, 58 N. W. 2d 505."

Aside from the frequent quarrels and arguments about cars and finances we do not find any substantial misconduct of the defendant that is corroborated except that which was condoned.

We have decided the evidence does not justify a divorce to the plaintiff.

The court below directed the plaintiff to pay her attorney's fees at $500 and defendant to pay his own

attorneys $500. This latter fee has been receipted for by the attorneys on the docket and is no longer a lien on the joint real estate. The attorneys however stated in open court before us that only $100 was paid. There is no authority in a divorce suit to assess or tax attorney's fees except as expressly provided by statute and there is no provision for their allowance against the wife nor to fix those which the husband is to pay his own attorneys. O'Neill v. O'Neill, 164 Neb. 674, 83 N. W. 2d 92, 66 A. L. R. 2d 875.

Inasmuch as one of the assignments of error concerns the assessment of the attorney's fees below to the plaintiff and she seeks to have them reassessed in this court, we shall proceed to fix them though it is unusual for this court to do so as far as those in the district court are concerned. We think they should be paid by the defendant but they cannot be large. The parties are in straitened circumstances and the children must be provided for. We therefore assess the fee to be paid to plaintiff's attorney in the district court at $250, and in this court at $250, both to be paid by the defendant, together with the costs in both courts.

The judgment is reversed and the cause remanded with directions to dismiss the plaintiff's petition and the defendant's cross-petition at the costs of the defendant, including the fees fixed herein for plaintiff's attorney.

REVERSED AND REMANDED WITH DIRECTIONS.