ELAINE JEAN SPILNEK ROSS, APPELLANT AND CROSS-APPELLEE, V. EVERT A. ROSS, APPELLEE AND CROSS-APPELLANT.

119 N. W. 2d 495

Filed February 8, 1963. No. 35359.

E. Merle McDermott, for appellant.

Kelly & Kelly, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

The issues in this case are clearly drawn from the plaintiff's petition, and the defendant's responsive amended answer and cross-petition, upon which the case was tried. Each party alleges extreme cruelty, denies the allegations of cruelty as to the other, and prays for divorce. The plaintiff asks also for child support, alimony, and a division of the property acquired by the parties during their marriage. The court denied the plaintiff a divorce, granted the defendant an absolute divorce on the cross-petition, and gave him the custody of the two minor children. The plaintiff was awarded alimony of $3,000 payable in certain installments. The plaintiff perfects her appeal to this court. By appropriate assignments of error, plaintiff asserts she is entitled to a divorce, custody of the minor children, and that the award of alimony was insufficient.

We deem the following applicable to this appeal: "In an appeal to this court in a divorce action the cause is tried de novo. Messer v. Messer, 157 Neb. 312, 59 N. W. 2d 395; Workman v. Workman, 164 Neb. 642, 83 N. W. 2d 368. * * * When the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. Stohlmann v. Stohlmann, 168 Neb. 401, 96 N. W. 2d 40; Dier v. Dier, 141 Neb. 685,

4 N. W. 2d 731. * * * Any unjustifiable conduct on the part of either the husband or wife, which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the bodily health and endanger the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty.' See, § 42-302, R. R. S. 1943; Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321; Egbert v. Egbert, 149 Neb. 227, 30 N. W. 2d 669; Workman v. Workman, supra. * * * Extreme cruelty may consist of personal injury or physical violence, or it may be acts or omissions of such character as to destroy the peace of mind or impair the bodily or mental health of the one upon whom they are inflicted or toward whom they are directed, or be such as to destroy the objects of matrimony. See, Messer v. Messer, supra; Workman v. Workman, supra." Waldbaum v. Waldbaum, 171 Neb. 625, 107 N. W. 2d 407.

Corroboration of facts alleged in the petition is a basic essential under our statute for the right to a decree of divorce. § 42-335, R. R. S. 1943. No general rule may be laid down as to the degree of corroboration required, but each case must be decided on its own facts and circumstances. Goodman v. Goodman, 168 Neb. 841, 97 N. W. 2d 336; Hines v. Hines, 157 Neb. 20, 58 N. W. 2d 505; Schlueter v. Schlueter, 158 Neb. 233, 62 N. W. 2d 871. Corroboration relied upon in a divorce action must in itself be competent evidence of the acts and conduct asserted as a ground for divorce. Laughrey v. Laughrey, 171 Neb. 132, 105 N. W. 2d 576.

The parties were married August 11, 1948. Plaintiff is now 30 years of age and the defendant 35. They have two children, a girl and a boy, ages 10 and 7, respectively. The defendant owned no real estate, but all during the course of their marriage, he operated a farm of 178 acres near St. Paul, Nebraska. They accumulated various items of personal property, automobiles, machinery, cattle, and grain by their joint efforts during

this period of time until their separation on or about October 30, 1961. The defendant, besides conducting the farm operation, worked at an ordnance plant from 1952 to 1954, drove a school bus from 1956 to the spring of 1961, and beginning in the spring of 1961 was employed by a construction company involved in land leveling.

From this general summary of their marriage, we proceed to an evaluation of the evidence. Until approximately August 1961, it appears that their marital life was generally harmonious and that the nature of the disputes and arguments arising in that period of time can be characterized only as the normal day-by-day incompatibilities and arguments incident to the ordinary marriage. The plaintiff attempts to detail certain acts of physical cruelty beginning in the first year of their marriage. She recites an argument at that time about some pigs and relates another occurrence in the year of 1956. Her testimony, even as to these specific events, is vague and general in nature. Outside of this testimony, she claims generally that the defendant beat her and struck her on an average of once a month during the ensuing 13 years. This testimony is entirely uncorroborated, except as to a general recollection by the parents of the plaintiff as to the belligerency of the defendant and that he did take hold of her at certain times. The record is devoid of any evidence on her part that said acts were of such a character at the time, or had such a continuity, that they affected her bodily or mental health during this period of time. The defendant denies all testimony relating to these events. It is also apparent that the plaintiff continued the marital relation after each and all of the alleged acts of physical cruelty. Condonation is complete if there is a resumption of marital relations after the alleged breach of marital duty. Mislivec v. Mislivec, 172 Neb. 290, 109 N. W. 2d 393.

The serious difficulty between the parties appears to

have arisen soon after the defendant was employed with Swatter, Incorporated, a land leveling construction firm, and the association that developed between the plaintiff and the defendant's employer on this job, a Mr. Oltman. In August 1961, both parties testified that they began to have arguments concerning her conduct and activity with relation to Oltman and Oltman's visits to their home. The nature of these visits, and whether Oltman visited alone, are in dispute between the parties. The defendant's version of this situation was definitely corroborated by the eyewitness testimony of the next door neighbors living approximately within a block away. The plaintiff complains of an incident in September 1961, when she went to town and the defendant hid in the trunk of her car, and when she discovered him, he was holding a gun. She does not contend that the gun was pointed at her or that the defendant threatened her with it. Her testimony as to the condition of the gun is uncorroborated, while the defendant's testimony, that it was broken and unsuitable for use, is corroborated. It appears that after this incident, they both went home and continued their marital relationship. While the defendant's admitted conduct in this instance appears to be rather bizarre in character, we can find nothing in this isolated incident that would justify a finding of extreme cruelty within the range of the application of the rule. A few days after the incident mentioned above, the plaintiff complains, in substance, of the erratic driving and conduct of the defendant in connection with returning from a party they went to at Paplin, Nebraska. At this party, they were the guests of Oltman, defendant's employer, and in the company of other employees with whom the defendant had been working. The testimony of the plaintiff is vague and indefinite as to the incidents during the evening prior to their departure. During the evening, it developed that she left the party and was gone for a considerable period of time in the company of Oltman,

his wife, and some other people. This, in turn, incited the defendant's suspicions, and the evidence is substantially to the effect that the defendant drove so erratically on the way home, the plaintiff grabbed the keys and stopped the car, and another couple got out of their car and continued on home with some parties following them. However, she continued on with the defendant and again the car was stopped because of the erratic driving of the defendant. In any event, the evening ended up by the couple returning to their home. The most that can be said of the defendant in these two incidents is that his conduct may have been unwise, and perhaps impulsive, responding to the suspicions as to improper relations between the plaintiff and Oltman. No substantial inference can be drawn from the evidence that the impact of these two specific incidents caused the plaintiff any particular anguish, or harm, or interfered with the marital relations any more than the other numerous arguments and discussions that they had concerning her conduct with Oltman. Summarizing all of the evidence of the plaintiff, it consists of recitals of the plaintiff as to isolated incidents, many of them entirely uncorroborated, and none of them reaching the level of the quality of the evidence necessary to sustain a finding of extreme cruelty. The trial judge came to this conclusion, and we agree.

Turning now to the defendant's testimony, he testified substantially that he and his wife got along well in their marriage relationship until the summer of 1961. They bought a new car. He was making good money, outside of the farming operation, working for Oltman and making about $100 per week. About August 1961, the wife seemed to lose interest in the home, the children, and the marriage relationship. The children were left for long periods of time with relatives or the neighbors. The plaintiff, during the daytime, had almost the exclusive use of the new black and white Chevrolet automobile. Oltman visited the home and was inside

the house with the plaintiff at different times. This testimony was corroborated by the Novotnys, the neighbors living about a block away. The plaintiff refused to give an explanation for the large amounts of gasoline used in the new automobile, or the quantity of mileage it was driven, which incited the suspicions of the defendant. In any event, and as a result of their difficulty, the plaintiff left the home on approximately the 30th day of October 1961, moved to the city of Grand Island, Nebraska, became employed, and was living in a two-room apartment in a rooming house, consisting of a kitchenette and combination living room-bedroom. The significant part of the testimony on behalf of the defendant in this case comes from a Mr. Thorvald Jacobsen, an independent witness. He testified that he had been acquainted with the defendant all of the defendant's life and that he was acquainted with the plaintiff. On August 9, 1961, he was examining some property owned by him approximately 10 miles north of the place where he lived in the vicinity of St. Paul, Nebraska. He was in the company of his son inspecting some land. An automobile was parked on his land which he first discovered from the use of binoculars. Jacobsen and his son drove up to this automobile on his land, got out of the car, and approached. The car was a black 1961 Chevrolet Bel-Air automobile with a white top, an identical model with the one the defendant and the plaintiff purchased earlier in 1961. He identified this automobile as having license No. 49-2753, the license of the plaintiff and defendant's black 1961 Chevrolet Bel-Air automobile with a white top. Outside of the car, there were two empty pop bottles, an empty whiskey bottle, and several cigarettes. When he came up to the automobile, there were two people in the back seat of the car. As he walked up, he could see no one in the car, but as he approached two people sat up, and he identified the plaintiff, whom he had known, and stated she was in the process of pulling up her slacks and tucking

.

in her blouse. This witness testified that the man in the car made no response to his inquiry, except asking him if he owned the land. He testified that he warned them about the danger of cigarettes and the burning of the grass on his land, and then left. Later on, in the company of the defendant and a cousin of the plaintiff, he made a trip to Loup City, Nebraska, and positively identified the man in the car as being Mr. Ed Oltman. There is considerable detail as to the development of this testimony. Suffice to say, the testimony of this independent witness is convincing and persuasive as to definite misconduct on the part of the plaintiff.

The overall picture in this case is one of harmony until August 1961. There is a mass of testimony in the record, much of which is conflicting, and many statements, on the part of both the plaintiff and defendant, are uncorroborated. The testimony as to the incident of August 9, 1961, is convincing and persuasive as to misconduct. The district court observed and heard the witnesses and was in a favorable position to recognize merit, or lack of merit, of conflicting statements on the part of the witnesses. The determination of the reliability of these witnesses depends much on the trial court's observation, and the conclusions of the trial court as to the reliability of such testimony will be carefully regarded by this court. Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361; Killip v. Killip, 156 Neb. 573, 57 N. W. 2d 147. We hold that the decision of the trial court with respect to issues of cruelty was correct.

The trial court determined that the custody of the children should be with the defendant. The applicable rule is stated in Swanson v. Swanson, 137 Neb. 699, 290 N. W. 908: "To determine who should have the care and custody of the children, the court will always consider their best interests and welfare. There is no duty more delicate or responsible given to any court. At times it is most difficult, but if the decree of the trial court is justified by the evidence, its discretion will ordi-

narily not be disturbed. * * * The trial judge had the best opportunity to judge what was for the best interests and welfare of these three minor children and he placed them in the custody of the father, subject to his further order. The record discloses no better solution. The welfare of these children demands the highest consideration of the court and not the desires of the parents."

The evidence shows that until the beginning of the affair with Oltman, the plaintiff was a good mother. It also shows a marked difference in plaintiff's attitude and conduct in this respect beginning in the summer of 1961. There is persuasive evidence that continuously over this period of time, she left the children with relatives and neighbors for considerable lengths of time. The evidence is undisputed that the defendant is doing an efficient job of taking care of the children; and that the plaintiff left the home, has moved to Grand Island, Nebraska, is now working as a saleslady, and is occupying a small second floor apartment. The record in this case reveals consultation by the trial judge with the two children, ages 10 and 7.

While we recognize that ordinarily in this situation, the best interests of the children require that they be given into the care and custody of the mother, under these circumstances, we feel that it is apparent that the best interests of the children require that their custody be given to the father. The only alternative plan offered the trial court was taking these children from the family home and moving them to a new and strange environment in a second floor apartment in the downtown section of Grand Island, Nebraska. The comparative inadequacies and instability of the prospective home for these children, especially in comparison with their present situation, is apparent. The criterion is the best interests of the children and not the possessive desires of either one of the parents. We hold that the trial court was correct in making this disposition of the custody of the children.

The plaintiff challenges, as inadequate, the alimony granted to her in the amount of $3,000 of which $500 is payable on or before June 1, 1962, and $500 on December 31 of each year until the full amount has been paid without interest. The proper rule in determining alimony and division of property is not in dispute in this case; therefore, we will not repeat it here. Ivins v. Ivins, 171 Neb. 838, 108 N. W. 2d 99; Kinch v. Kinch, 168 Neb. 110, 95 N. W. 2d 319.

The articles of property owned by the parties are not in dispute. They are all personal and appear in exhibit 3 in the bill of exceptions. They consist of livestock, farm machinery, crops, and motor vehicles ordinarily associated with a farming operation. The plaintiff testified that exhibit 3 was prepared by herself, her father, and her attorney. There is no specific testimony as to the valuation of these items. The only testimony on behalf of the plaintiff was generally that the amounts listed in exhibit 3 are a proper valuation. There is no independent testimony. The defendant's testimony, in effect, is in agreement as to the items of property that they have. He testifies specifically and without contradiction as to the reduced valuation of certain items and that some of the items of crops have been used up in the feeding of the livestock. In this condition of the record, the trial court found the gross valuation of personal property of the parties was $13,-517 subject to an indebtedness of $5,632 or net personal property assets, excluding household goods and furniture, of $7,885. The parties have been married since 1948, and it is undisputed that the accumulation of property was due to their joint efforts. The plaintiff, in her argument, merely asserts, after quoting the general rule as to the factors involved, that the division is not equitable and just. She asserts no particular error of the trial court in this respect, either as to valuation or the failure to consider any of the elements that should be taken into consideration. Her assertion is apparently

based upon the assumption that exhibit 3, prepared by her, her father, and her attorney, should be taken at face value. The trial court had a right to make an independent determination of valuation, and we are unable to find any error in the trial court's holding in this respect. We come to the conclusion that the award of $3,000 out of a net valuation of $7,885 is a fair and reasonable one.

The next question presented is the defendant's cross-appeal by which he asserts that the evidence was conclusive that the plaintiff herein was guilty of adultery and that she is not entitled to an award of alimony or attorney's fees. Baker v. Baker, 166 Neb. 306, 89 N. W. 2d 35. The defendant does not allege adultery in his amended cross-petition. There is no appropriate pleading on which to justify such finding, the trial court did not make such finding, and we find no reason to disturb that conclusion.

The plaintiff also asserts the inadequacy of the allowance for attorney's fees in the trial court. We feel that the allowance was not adequate. We allow an additional fee for services of plaintiff's attorney in the trial court in the sum of $100.

The ' judgment of the trial court in all respects is affirmed with the exception of the allowance of the attorney's fee. The judgment is, therefore, affirmed as modified.

AFFIRMED AS MODIFIED.