MARVEL CONRY, APPELLEE AND CROSS-APPELLANT, V. WILLIAM E. CONRY, APPELLANT AND CROSS-APPELLEE.
126 N. W. 2d 188

Filed February 7, 1964.   No. 35557.

Thomas E. Brogan, for appellant.

Frederick M. Deutsch, William I. Hagen, and James P. Monen, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The plaintiff, Marvel Conry, brought this action for

divorce against William E. Conry, defendant, on the grounds of extreme cruelty. The defendant denied the allegations of the plaintiff's amended petition, prayed that it be denied, and cross-petitioned for divorce charging the plaintiff with extreme cruelty and pleading that he be granted a divorce. The plaintiff's amended petition was filed on September 10, 1962. The defendant's answer to the amended petition and the cross-petition of the defendant were filed on September 27, 1962. The answer to the cross-petition by the plaintiff and her reply to the answer of the defendant were filed on October 2, 1962. The trial court granted the plaintiff an absolute divorce, a certain interest in defendant's land, subject to certain encumbrances, and other personal property; allowed the defendant certain personal property; required the defendant to pay attorneys' fees for the use and benefit of the plaintiff's attorneys; and taxed the costs to the defendant. The plaintiff filed a motion for new trial. The defendant filed a motion for new trial. The trial court overruled both of these motions for new trial. The defendant perfected appeal to this court.

The plaintiff and defendant were married on December 29, 1942, at Sioux City, Iowa. When they were married, the plaintiff was 29 years old and the defendant 41 years old. At the time of trial the plaintiff was 49 years old and the defendant was 61 years old. The defendant had a master of arts degree. He had been a farmer and schoolteacher. After the marriage, the defendant obtained a position teaching at Hurley, New Mexico. He was employed there from January 1943, until approximately the first 2 weeks in May 1943. They then went back to Kingsley, Iowa. The defendant secured a teaching position in Grand Meadow, Iowa, and taught school there until May 1, 1944. The defendant gave up teaching and they moved onto a farm in the spring of 1944. Later, the defendant taught school at Belden, Nebraska. This was in 1957 and 1958. He re-

turned to their home in Iowa on weekends by driving 75 to 80 miles. The defendant was trying to farm and teach school at the same time. The defendant secured a position teaching school at Meadow Grove, Nebraska, moving there in August 1961.

The plaintiff testified that the defendant struck her the first time on September 18, 1953; and that they had a quarrel prior to the assault about an electric motor that had burned out. The defendant told the plaintiff that he did not want her and desired a divorce. The plaintiff further testified that she had a breast cancer operation in 1954, at which time they quarreled and the defendant told her he wanted a divorce. He told her that after the operation. She further testified that when he visited her he said that he wished she had died, and that he would be rid of her. The plaintiff further testified that the defendant beat her up on September 21, 1957. On March 10, 1959, they quarreled about financial affairs, and at numerous other times they quarreled over different matters pertaining to their finances.

The record discloses that the extreme cruelty complained of by the plaintiff occurred in the State of Iowa. There is considerable evidence pertaining to the real estate of both parties, the manner in which it was managed, how it was farmed, and with reference to financial difficulties existing between the parties which need not be set forth.

With relation to the difficulties between the parties after they moved to Meadow Grove, Nebraska, in August 1961, the record discloses the following: That on June 3, 1962, the parties quarreled about the plaintiff working; that the defendant told the plaintiff he did not want her around any more and asked her to get a divorce; that he always asked her to get a divorce; that they generally quarreled over money that the plaintiff earned; and that the defendant did not want the plaintiff to spend her money, and most of all, not to spend his money. The plaintiff further testified that she left the house after

a quarrel about her working; and that the defendant told her to go and get an apartment in Norfolk and stay there, that he did not want her near him. The plaintiff told the defendant that her job would last but a little longer and he would have to support her. The defendant replied that he did not care what it cost him, he wanted to get rid of her. On June 4, 1962, the plaintiff asked the defendant if he really wanted her to leave, and he told her to go. The plaintiff then made arrangements to move on June 5, 1962. The defendant had instructed the bank not to honor any checks of the plaintiff on their joint account. Before the plaintiff left Meadow Grove she went to the bank and asked for money, and her check was honored in the amount of $50. There is evidence that the defendant paid some amounts to the plaintiff for her support after she left Meadow Grove. During the summer vacation the defendant was working on a construction job at Tilden, Nebraska. At that time the plaintiff took their 1956 Chevrolet automobile and the defendant kept a 1947 Chevrolet automobile, but in a week the defendant appeared at the plaintiff's apartment in Norfolk with a policeman and got the 1956 Chevrolet.

The defendant testified that they quarreled over the use of the car and the plaintiff told him she was going to leave him, that she had secured an attorney, and that she was taking all of the furniture, the car, and all the money in the bank. The defendant further testified that he did not strike the plaintiff or abuse her in any manner at that time; and that the plaintiff asked him if, under these conditions, he wanted a divorce and he said that he did. On June 5, 1962, the plaintiff was not up when the defendant went to work, but when he came home from Tilden certain furniture and one of the cars were gone. He obtained the 1956 Chevrolet and gave the plaintiff the 1947 Chevrolet to use. The defendant also testified that he never told the plaintiff that he

wished she would die when she was in the hospital or that he was happy that she was sick.

Mrs. Caroline Witt testified, in behalf of the plaintiff, that she was the hostess at the Hotel Madison coffee shop, and the plaintiff worked in the Lamp Room at the time she became acquainted with her. In June 1962, she went to Meadow Grove with the plaintiff, and used her own car for transportation. She was present at a conversation had between the plaintiff and the defendant, which conversation started in the schoolhouse. This witness walked out of the schoolhouse and the plaintiff and defendant came out and stood in front of the house and talked. This conversation took place after June 5, 1962. This witness further testified the defendant stated that the plaintiff had cost him $44,000, that he was "very much finished with her," that he wanted a divorce, and that if she did not go ahead and obtain one, he would. The plaintiff then said that she would like to come back because she had no money and did not know what she was going to do if she was laid off of her job. The defendant replied that he did not want her back, that he was better off without her, and that he wanted his furniture back. This witness further testified that the plaintiff asked the defendant for money and he said he did not have to give her any money because she had left. In September 1962, shortly after school started, this witness was present at a conversation between the plaintiff and defendant. She testified that the plaintiff and defendant went into the house to talk; that she could hear voices, and when they got louder she decided to go into the house and tell the plaintiff that they had better go; that she stayed in the car, and then went into the house, and by that time things had settled down; that the plaintiff then asked the defendant if she could come back and said that she did not know what she was going to do; and that the defendant told her that if she came back she would not get any money and could not use the car, and that he was

a better superintendent without her, and everyone in Meadow Grove thought he was better without her. On cross-examination this witness testified that before that day in June, she had never met the defendant and had never been in their home before that time.

This case is triable de novo in this court.

The following sections of the statute are applicable to a determination of this appeal.

Section 42-303, R. R. S. 1943, provides in part: "(2) No person shall be entitled to a divorce for any cause arising out of this state unless the petitioner or defendant shall have resided within this state for at least two years next before bringing suit for divorce, with a bona fide intention of making this state his or her permanent home."

The plaintiff's amended petition was filed on September 10, 1962, just over 1 year after the parties moved to Meadow Grove, Nebraska. The parties lived together at Meadow Grove until June 5, 1962. All of the acts of alleged physical cruelty conducted by the defendant toward the plaintiff took place in the State of Iowa, prior to April 24, 1959, and while the parties were residents of the State of Iowa. Therefore, the above statute is applicable as to the alleged extreme cruelty related by the plaintiff which occurred in the State of Iowa.

Section 42-303, R. R. S. 1943, also provides in part: "(1) No person shall be entitled to a divorce for any cause arising in this state who has not had actual residence in this state for at least one year next before bringing suit for divorce with a bona fide intention of making this state his or her permanent home, unless the marriage was solemnized in this state and the applicant shall have resided therein from the time of the marriage to filing the petition."

Section 42-335, R. R. S. 1943, provides: "No decree of divorce and of the nullity of a marriage shall be made solely on the declaration, confessions or admissions of the parties, but the court shall, in all cases, require other

satisfactory evidence of the facts alleged in the petition for that purpose."

The defendant contends that the evidence relating to the plaintiff's right to a divorce for acts committed by him against her in the State of Nebraska must be corroborated by competent evidence. The evidence relied upon in the instant case to corroborate the plaintiff's evidence is that of Caroline Witt heretofore set forth.

"Corroboration of the acts of extreme cruelty testified to by a plaintiff in a divorce action is a basic essential for the right to a decree of divorce. The degree of corroboration required must be determined on the facts and circumstances of each particular case. * * * Corroboration relied upon in a suit for divorce must be competent evidence of the acts and conduct asserted as a ground for divorce." Ross v. Ross, 174 Neb. 795, 119 N. W. 2d 495.

"A decree of divorce may not be granted on the uncorroborated declarations, confessions, or admissions of the parties, and in all cases corroborative evidence of the facts alleged to constitute a ground for divorce is required. * * * The corroboration relied upon in a suit for a divorce must in itself be competent evidence of the acts and conduct asserted as a ground for divorce." Laughrey v. Laughrey, 171 Neb. 132, 105 N. W. 2d 576.

The burden of proof in this case was upon the plaintiff. The evidence indicates a degree of incompatibility between the parties. The evidence of Mrs. Witt is insufficient to constitute any corroboration of extreme cruelty as alleged by the plaintiff in her amended petition.

As stated in Brown v. Brown, 130 Neb. 487, 265 N. W. 556: "* * * mere incompatibility of temper is not a ground for divorce in this state." See, also, Smith v. Smith, 160 Neb. 120, 69 N. W. 2d 321. Nor does the fact that the defendant stated that he could not and would not live with the plaintiff entitle the plaintiff to a divorce.

The plaintiff cross-appealed on the ground that the

alimony allowed by the trial court and the division of property made by the trial court were grossly inadequate. This cross-appeal is denied.

Having concluded from the evidence and the authorities heretofore cited that the parties are not entitled to a divorce, the judgment of the trial court is reversed and the cause remanded with directions to dismiss the plaintiff's action.

REVERSED AND REMANDED WITH DIRECTIONS.