JOHN R. ARNOLD ET AL., APPELLEES AND CROSS-APPELLANTS, v. CARL H. HUENEFELD ET AL., APPELLANTS AND CROSS-APPELLEES.

127 N. W. 2d 196

Filed March 27, 1964.  No. 35571.

Vogeltanz & Grimminger, for appellants.

E. Harold Powell, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action brought by John R. Arnold, Kermit L. Arnold, and Lenora A. Arnold, his wife, plaintiffs,

against Carl H. Huenefeld and Louise Huenefeld, his wife, defendants. The purpose of the action was to obtain a mandatory injunction to restrain the defendants from maintaining an obstruction across a drainageway which interfered with the drainage from the plaintiffs' land over and across the land of the defendants. The trial court enjoined the plaintiffs from maintaining the drainage level in the fence line at the east side of the west half of the northeast quarter of Section 26, Township 10 North, Range 7 West of the 6th P. M., in Hamilton County, from the southeast corner thereof along said fence line a distance of 100 feet north, at a level which is higher than 44.0 feet as determined from the datum used in the preparation of an exhibit; and enjoined the defendants from maintaining the drainage level in the fence line at the north side of the west half of the southeast quarter of Section 26, from the northeast corner thereof along the fence line a distance of 100 feet west, at a level which is higher than 44.0 feet, to be determined from the datum used in the preparation of an exhibit, and from maintaining the surface drainage south therefrom at a level which would prevent complete drainage of all surface waters which come onto their land from the north at said drainage level. The court denied the plaintiffs any damages for loss of crops. The defendants filed a motion for new trial which was overruled. Defendants appeal.

The plaintiffs' petition alleged that the plaintiffs owned the west half of the northeast quarter, the northwest quarter, and the north half of the southwest quarter of Section 26, Township 10 North, Range 7 West of the 6th P. M., in Hamilton County; and that the defendants owned the west half of the southeast quarter of said Section 26. The plaintiffs' land is north of the defendants' land. The petition further alleged that in 1951 and prior thereto rainwater would drain from the land of the plaintiffs onto and across the land of the defendants; that there was a definite drainageway from

the land of the plaintiffs onto the land of the defendants at a point approximately 400 feet west of the northeast corner of the defendants' land; that there was a definite watercourse from that point in a general southerly direction across the land of defendants, which drainageway did in 1951 and prior thereto drain the waters from the land of the plaintiffs and their predecessors in title over the land of the defendants; that in 1952, the defendants did certain land leveling which raised the level of the land in the drainageways before mentioned, which prevented drainage of waters from the plaintiffs' land; and that defendants threatened to continue such course of action causing loss of crops to the plaintiffs in each succeeding wet year.

The plaintiffs in their second cause of action alleged damages to their crops in the years 1958, 1959, and 1960.

The defendants' amended answer admitted the ownership of the lands as alleged in the plaintiffs' petition, and denied every other allegation contained therein. The defendants alleged that for more than 50 years the contour of the land where the lands of the plaintiffs and the defendants adjoin had remained as it was, and it was not possible for water to drain from the land of the plaintiffs onto or over the land of the defendants; and that if the plaintiffs had any right of drainage 'over the land of the defendants, the same disappeared over 50 years ago. Defendants admitted that they did certain land leveling upon their land; but denied that it in any way affected the drainage from plaintiffs' land or caused any damage to crops. The defendants alleged that the plaintiffs' land had historically contained potholes and lagoons which in rainy weather would fill up, but that such waters never drained onto the land of the defendants; that no waterway or drainageway ever existed from the plaintiffs' land to the defendants' land; that sometime in the 1950's the plaintiffs did certain land leveling, and in performing such leveling the plaintiffs failed to take into account the small lagoons and pot-

holes, except that plaintiffs dug out a substantial area adjacent to the division fence of the parties which served as a man-made lagoon in a place where such lagoon did not previously exist; that such lagoon catches waters from rains and irrigation operations which flow over and upon adjacent land owned by James M. Woodard and Mabel Woodard, described as follows: The east half of the northeast quarter of Section 26, Township 10 North, Range 7 West of the 6th P. M., in Hamilton County; that such man-made lagoon has no drainage course over defendants' land and defendants are under no obligation to alter their premises to provide drainage; and that plaintiffs have a drainageway upon their own land. The defendants denied that the plaintiffs lost any crops, and denied that any loss was caused by defendants at any time.

The plaintiffs' reply to the defendants' amended answer was a general denial of the allegations contained therein, except as admitted.

There is no dispute in the record that the plaintiffs own the land as heretofore described in their amended petition, and that the defendants own the land as is also described therein. The plaintiffs' land is north of the defendants' land.

In the companion case, James M. Woodard and Mabel Woodard, his wife, plaintiffs, v. Charles A. Huenefeld and Monetha N. Huenefeld, his wife, defendants, the plaintiffs Woodard own the east half of the northeast quarter of Section 26, Township 10 North, Range 7 West of the 6th P. M., in Hamilton County. Charles A. Huenefeld and Monetha N. Huenefeld, his wife, own the east half of the southeast quarter of said Section 26. The Woodards' land is north of the land of Charles Huenefeld, and east of the Arnold land. The Charles Huenefeld land is east of the Carl Huenefeld land. There is a line fence running from east to west dividing the lands of the Arnolds and Woodards from the lands of the Huenefelds. There is a fence running from the

south to the north between the Arnold land and the Woodard land. We are primarily concerned in this appeal with the Arnold land and the Carl Huenefeld land. Also involved herein is the Charles A. Huenefeld land and the Woodard land.

While the cases are companion cases, they are not consolidated, and consequently we will treat them as separate appeals. Both cases involve an alleged drainage right at a corner common to the four parcels of land. This corner post is between the Woodard property on the northeast, the Arnold property on the northwest, the Carl H. Huenefeld property on the southwest, and the Charles A. Huenefeld property on the southeast.

A consulting engineer who surveys land and ascertains the levels thereof, testified that the levels of land are the difference in elevation at various points on the land which are based on aid datum, either assumed or known from previous surveys from different organizations. He makes a record of such levels, from which a contour map is made with figures and lines indicating the contour and various changes in elevations. Several exhibits were introduced and received in evidence, examined, and marked by this witness. This witness made a map of elevations on April 28, 1961. The evidence of this engineer shows that the drainage from the plaintiffs' land was to the south across the land of the defendants.

The testimony of another witness who had done some surveying for land leveling in effect corroborated the testimony of the foregoing witness to the effect that the drainage from the plaintiffs' land was to the south over the land of the defendants, and that the drainage is prevented from where it would flow naturally because of a dike built up by the defendants.

Another witness testified with reference to some land leveling he did for the defendants in 1953 or 1954. The effect of his testimony is to corroborate the testimony of the two foregoing witnesses.

Wesley F. Smith, who had been acquainted with the land here involved for many years and had lived on the Arnold land and farmed it for a number of years, testified that he had lost crops because of the failure of the water to completely drain out to the south in a wet year, but the loss would not exceed half an acre; and that there was a low area in the southeast corner of the east 80 acres of the Arnold land. On cross-examination he testified that one year at harvest time there was a storm when 6 or 7 inches of rain fell, and that a little bit of water went out of the low place on the Arnold farm. He further testified that if there was a quick rain the water might cover 2 acres, but in a day or two it would be practically gone; that there was a little water that ran out across to the south before the 1930's; that in 1934 there was a lot of wind, and due to dry weather a lot of dirt filled in the fence row to a considerable extent and built it up high; and that there was a plum thicket along the east-west line between the properties of Arnold and Woodard and the properties of Carl and Charles Huenefeld, which was filled in quite a bit. On redirect examination this witness testified that the water drained from the Arnold farm and had to go south, and could not go east.

Claude Smith testified that the drainage was from the same position as testified to by his brother Wesley F. Smith, the preceding witness; that the water went south across the defendants' land; that the loss of crops was not more than half an acre after the dust storms in the 1930's and before 1950; and that the plaintiffs lost 7 or 8 acres of corn in one year because of drowning, in 1956 or 1957, after the construction of the dike by the defendants along the north side of their farm. On cross-examination this witness testified that he had never seen too much water accumulate in the southeast corner of the east 80 acres of the Arnold farm.

John Arnold testified that he and his brother purchased their farm in 1952; that in the latter part of

August or the first part of September 1954, his brother had plowed the wheat ground and he was working the ground in that area; that the plowing done by his brother had plowed dirt away from the fence and left a furrow, and in the meantime dirt had been thrown up and clods bigger than his fist had rolled over into the furrow from the defendants' dike; and that it looked to him as if the dike was 3 to 3½ feet high and wide enough so one could drive a car or tractor on it. In 1957, wheat was planted in this area by this witness. Water accumulated in the area which has been previously mentioned, but was drained out by digging through the fill on the Charles Huenefeld land. The digging was done by Charles Huenefeld, Raymond Obermeier, and this witness. After the place was dug out, Charles Huenefeld said he would keep that place open, and suggested that Obermeier and this witness do some leveling because of the low places on the Arnold and Woodard land and because they desired to irrigate, then the water would run through and a place would be kept open for it to drain. This digging was done approximately 20 feet east of the fence line between the Carl and Charles Huenefeld lands.

Raymond Obermeier testified that Charles Huenefeld came to him and wanted him to help dig a ditch to drain water off of some wheat. This witness was a tenant on the Woodard farm and had 12 acres of wheat planted. He believed that a place was dug out approximately 30 feet east of the corner post. He further testified that the water was almost at the top of the fill and they dug an opening about a foot deep; that the water drained out except in a small area back in the field; that he contributed to the water draining from the Arnold farm over onto the Woodard farm by pushing a shovel under the fence to let the water drain out; and that this was perhaps 20 feet or so north of the corner post. On cross-examination this witness testified that it was necessary to dig right up to the fence line and under it to get the water over to the irrigation fill. He

further testified that he dug out the ditch once after this time.

Carl H. Huenefeld testified that there was a 26-inch woven-wire fence with a barbed wire above the woven wire between his land and the Arnold land; that the woven wire was not visible to the naked eye except at one spot where the water had washed under and carried away the dirt a year or two before the time of trial; that the soil drifted in and buried the greater part of this woven-wire fence causing it to disappear about 25 years previously; that prior to that time the soil built up near that fence; that the wind from the north blew dust and dirt off the Arnold land onto that wire fence and there had been drifts in that area for a long time; that the ground was graded away from the north fence when the fill was made, and the fill was where the irrigation went and this was not against the fence line; that he helped his son Charles put in the irrigation lateral upon the fill; that the irrigation lateral was about 8 feet from the north division fence; that it was further out through the plum thicket; that the irrigation lateral was about 2 feet across the top and carried water effectively for irrigation purposes a distance of about 40 rods; and that the irrigation lateral would be about 1 foot above the original level of the ground at the east side of Carl Huenefeld's 80 acres. This witness further testified that the quantity of water that gathered in the southeast corner of the Arnold land since it has been leveled is a good deal more than it was previous to the time of the leveling; and that during the irrigation season the quantity of water in the southeast corner of the Arnold farm increased considerably from day to day and ran from the north against the fence line of his property and then east into a lagoon area.

Wesley Huenefeld testified that prior to 1957, he had seen mud holes and crops drowned out in the southeast corner of the Arnold farm, but not as must as at the present time. On cross-examination he testified

that there was no fill made and no water came across onto the Huenefeld land. He was referring to a leveling operation where it is claimed a fill was made on the north side of the Carl Huenefeld 80 acres.

Charles A. Huenefeld testified that he observed the Arnold and Woodard lands and observed the depression areas; that the contour of the Arnold land prior to the time it was leveled consisted of a depression area, mud holes, low areas which did not drain, other places that were pockmarked, lagoon areas, and low places scattered across the entire area of the Arnold land; that occasionally it would flood and the water would leave only by evaporation or percolation except in the event of a heavy rain which would fill up such places and the top level of the water would run off; and that the size of such area in the southeast corner of the Arnold farm would be 6 or 7 acres. This witness further testified that the water got over onto his farm through the ditch that was dug out in the fence line; that during the leveling operation or preparation of his irrigation ditch, no soil or dirt was placed in the fence line on his father's property or on his property; that he observed that Beech, who was working for him doing the leveling work, did not place any dirt in the fence line; that dirt was moved away from the fence line; that the irrigation lateral which this witness put in was quite close to the fence line, and in subsequent years it was moved so that a Jeep could be driven between the fence and the irrigation ditch; that there was no drainage from the Arnold land over to his land; that he never saw any evidence of water going across the fence line from the east 80 acres of the Arnold farm onto his father's land; that after a heavy rain he would see water accumulate on the north side of the fence but none of it came to the south side of such line; that the only time he ever saw water go across the fence line south was when someone made a man-made cut through the fence line; and that the dirt in the fence line was 15 inches above the water level at the

lowest place in the fence line that could be found.

There is much other evidence dealing with this drainage disclosed by exhibits and pictures which were testified to and which have been examined.

The defendants denied that there was any leveling done which caused any dirt to be placed near the east-west boundary line between the lands of the defendants and the plaintiffs. All of the Huenefelds testified that no water ever drained from the land of the plaintiffs through the fence line and onto the lands of the defendants.

The defendants set forth many assignments of error which may be summarized as follows: That the decision of the trial court is not sustained by sufficient evidence and is contrary to law; that the trial court erred in finding that the defendants built an obstruction which blocked a natural drainageway; that the order to remove the fence-line ridge down to a level of 44.0 feet constituted error; and that the trial court erred in finding there was a natural drainageway from the Arnold land over to the Huenefeld lands.

This case is for trial de novo in this court.

The parties agreed that the trial court view the premises of the parties here involved. In view thereof the following has application: The trial court is required to consider any competent and relevant facts revealed by a view of the premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings. See, Town of Everett v. Teigeler, 162 Neb. 769, 77 N. W. 2d 467; Mader v. Mettenbrink, 159 Neb. 118, 65 N. W. 2d 334; Walla v. Oak Creek Township, 167 Neb. 225, 92 N. W. 2d 542.

The following are applicable. In McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912, this court held: "It is the duty of those who build structures

across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably anticipated to drain there. This is a continuing duty. * * * Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale, or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors."

"For such an injury injunction is the proper remedy, and equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief." Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129. See, also, McGill v. Card-Adams Co., *supra*.

There are many cases in this jurisdiction holding the same as the above-cited cases.

It will be noted that the evidence in the instant case is in conflict. This being true, the following rule is applicable. "When the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Stohlmann v. Stohlmann, 168 Neb. 401, 96 N. W. 2d 40. See, also, Ross v. Ross, 174 Neb. 795, 119 N. W. 2d 495.

The plaintiffs cross-appealed, contending that the trial court erred in denying them any damages for loss of crops which they were entitled to recover due to the obstruction of the natural drainageway by the defendants. We have reviewed the evidence relating to this subject. There is no evidence to show the market value of the crops or the expenses with relation thereto. Neither is there evidence differentiating between the totally damaged crops and the partially damaged crops. A recovery for any alleged damages the plaintiffs may

have suffered would force the trial court to indulge in speculation and conjecture as to such damages. The general rule is that damages, to be recoverable, must be direct and certain. Contingent, remote, or speculative damages will not be allowed. See Gledhill v. State, 123 Neb. 726, 243 N. W. 909. This rule relates to the loss of crops. See Turnell v. Mahlin, 171 Neb. 513, 106 N. W. 2d 693. The cross-appeal of the plaintiffs is denied.

From a review of the record we come to the conclusion that the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.