JAMES M. WOODARD ET AL., APPELLEES AND CROSS-APPELLANTS, v. CHARLES A. HUENEFELD ET AL., APPELLANTS AND CROSS-APPELLEES.

127 N. W. 2d 191

Filed March 27, 1964. No. 35572.

Vogeltanz & Grimminger, for appellants.

E. Harold Powell, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

James M. Woodard and Mabel Woodard, his wife, plaintiffs, brought this action against Charles A. Huenefeld and Monetha N. Huenefeld, his wife, defendants. The purpose of the action was to enjoin the defendants in constructing and maintaining a dike or fill across a natural drainageway from the plaintiffs' land to the defendants' land. The trial court found that the general drainage of surface waters from the lands of plaintiffs, described as the east half of the northeast quarter of Section 26, Township 10 North, Range 7 West of the 6th P. M., in Hamilton County, is from the approximate east-west center thereof to the southwest, and that the natural drainage thereof leaves said land near the southwest corner thereof, and surface waters flow thence southerly across the land owned by the defendants and described as the east half of the southeast quarter of Section 26; that the defendants have erected a barrier to said drainage which barrier must be removed, provided the plaintiffs remove a barrier to drainage existing in their west fence line on their land; and that adequate drainage can be established by requiring plaintiffs to construct and maintain the drainage level in the fence line at the west side of their land, from the southwest corner thereof and north therefrom a distance of 100 feet, at the level of 44.0 feet, to be determined from

the datum used by the surveying engineer in taking readings and preparing an exhibit which shows the levels, and requiring the defendants to construct and maintain the drainage level in their fence line along the north side of their lands and east therefrom along their fence line a distance of 100 feet, and defendants to maintain the surface waters which come onto their lands from the north at said drainage level. Judgment was rendered in accordance with the findings. The defendants filed a motion for new trial which was overruled. Defendants appeal.

The plaintiffs alleged in their petition the ownership of the lands hereinbefore described, then followed allegations of blocked drainage quite similar to those alleged in the case of Arnold v. Huenefeld, *ante* p. 683, 127 N. W. 2d 196, hereinafter referred to as the companion case, with a similar prayer for relief.

For the second cause of action the plaintiffs asked that the fence line be established on the line of the United States government survey.

Defendants' answer is similar to the answer in the companion case.

The reply is in effect a general denial of the allegations of the defendants' answer not admitted.

The description of the locations of the lands is set forth in the companion case. The exhibits received in both cases have been examined and considered.

It was stipulated that the testimony of the consulting engineer and a surveyor might be considered as evidence in both cases.

Dr. James M. Woodard testified that he bought the land described in the petition in 1943; that the drainage in the south half of this land is to the southwest corner; that in times of high water the drainage was of such excess that the water would leave this land at a point approximately 200 feet east of the southwest corner; that there is a definite watercourse across that point; that leveling of the land has been done on the defend-

ants' land and there is a fill which affected the drainage of water from the plaintiffs' land; that he has been in that area after heavy rains; that there was a difference in the drainage so that instead of the water draining off "it was kind of choked up"; that the water pretty much drained off of his land before the fill was made; that after the fill was made some of the water formed in ponds on his land; that this was at times of heavy precipitation; that the water would run from his land onto the land of Charles Huenefeld prior to the leveling done on that land, at a point approximately 200 feet east of the corner post of the southwest corner of the plaintiffs' land; that the fill made in the drainageway by the defendants was close to 12 inches above the original level of the land; and that this observation was made after the irrigation lateral was placed at this point.

On cross-examination this witness testified that when there was a dry period the dirt would blow and practically every fence line was blown shut; that the fence line between his land and the Arnold land was blown shut and the fence line between his land and the Huenefeld land was blown shut; that the fence lines were "pretty open" at the time of trial, as they had been dug out and leveling had been done in some places; that he thought Charles Huenefeld said he would put in a drain or culvert to assist the drainage but he did not believe that Charles had done so; and that what he wanted was that the water should run to the south, and he believed that the defendants had built a fill so that it could not drain to the south.

Raymond Obermeier testified that he became a tenant on the Woodard land in March 1955; that when he first went on this land he noticed the dike built up on the south side of the division fence which is at the north side of the defendants' land; that in times of heavy precipitation, or in the irrigating of crops, the water would drain to the southwest corner; that the first time

he had any water problem was in 1957, before the wheat harvest; that there was a considerable rain, resulting in filling a great amount of water in the low area; that Charles Huenefeld came over and asked if this witness would help him to get the water to drain out of the low area; that there was water on the south side of the fence line 4 or 5 inches deep in the irrigation ditch; that the water was over the dirt in the fence line; that the water extended west approximately to the brace post against the corner post; that the dirt was higher in the fence line west of the corner post and he could not remember water ever being south of the fence line from there as far as he could see; that he and Charles Huenefeld started to dig from the south side to avoid the water while doing the digging, and dug through on the north side of the irrigation lateral; that the water started to flow through there quite fast because it was a low place; and that the water then went through the Charles Huenefeld fence line in that low area. He further testified that Arnold came down and assisted in the digging; that they dug as far north as the fence line itself, and dug under the fence and more water drained out; and that the digging that was done substantially let the water drain from the plaintiffs' land. He further testified that he remembered some conversation wherein Charles Huenefeld said that if the plaintiffs would level, and pull dirt down to fill up the hole on their land, Huenefeld would leave the drain open so that there would be no more waterholes on the plaintiffs' land; that Charles Huenefeld put a pipe in the ditch, and in making a ditch across it punched a hole in the pipe and dirt rolled into it; and that the water at that time was above the pipe, and when this witness dug it out the water could not go through the pipe. This was after 1957.

On cross-examination he testified that the southwest portion of the farm was recognized as a wet area. He did not know whether this area could be classed as a

lagoon, but it was a low area where at times he could not walk along the fence line on the plaintiffs' side of the fence with a pair of irrigation boots which measure 17½ inches tall when the water had been that high, that is, right at the north side of the fence line. He further testified that there was no water running across the fence line at that time; and that at the time of trial there was no irrigation ditch south of the fence, but there was still a raise there which is lower than it was, but it is still a raise. On redirect examination he testified that he saw the fill on the south side of the fence line before the irrigation ditch was put in; and that he estimated the fill to be approximately 12 to 14 inches higher than on the north side of the fence line and would hold a good foot of water that previously went through there before the fill was made.

Marion Bayne testified that he operated the farm owned by the plaintiffs, moved on it around 1940 and moved off in 1950; that he knew how the surface waters drained on the south 40 acres of the 80 acres, and that the natural flow of water was to the south; that he observed where the water would leave the plaintiffs' land to the south during times of heavy precipitation which would be close to 20 rods east of the southwest corner of the south 40 acres; that he had seen the water from that approximate position flow to the south; and that he had a conversation with Carl Huenefeld one year when there was considerable rain, and Carl Huenefeld told him that if he wanted to drain the water out he could. Carl at that time operated the 80 acres south of the plaintiffs' land. In compliance with that conversation he took an old single-row lister with a team of horses, waded out, and plowed a furrow as deep as the team could pull as close to the fence as he could get, then took a spade and dug under the fence which let considerable water drain off the plaintiffs' land. In times of heavy precipitation, water would drain out to a certain extent. On cross-examination he testified that

in the southwest part of the plaintiffs' land there was no irrigation or anything, so he just called that a water-hole; and that it was an area of poor drainage.

Carl H. Huenefeld testified that at one time he owned the land immediately south of the plaintiffs' 80 acres; that he accompanied Dr. Woodard, the owner of the land north of that of his son Charles, to the site of Dr. Woodard's land in 1959 or 1960 because he wanted the doctor to see how much water there was on his land; and that he saw the water approximately 28 feet north from the Charles Huenefeld fence. He did not recall that there was any dike on the Charles Huenefeld land which was holding any water back on the plaintiffs' land. He sold the land south of the plaintiffs' land to his son Charles Huenefeld. In the years that he farmed this land, he did not recall seeing any water come across from the plaintiffs' land onto this land. He testified that there are many places in that part of Hamilton County where water either soaks away or evaporates; that there are low places on the plaintiffs' land, and in recent years the water ran over the Charles Huenefeld land and down a waterway which Charles had constructed; that prior to about 4 years before time of trial the water mostly stayed on the plaintiffs' property; and that when the water on the plaintiffs' land gets too high it does run over onto the Charles Huenefeld land.

The testimony of this witness is to the effect that there was nothing done on the land of his son Charles which interfered in any way with the drainage of the plaintiffs' land, or which in any way blocked the drainage of the plaintiffs' land to his son's land.

Charles A. Huenefeld testified that he owned the 80 acres of land south of the plaintiffs' land; that he purchased it in 1946; that he has been familiar with this land since 1920, and was also familiar with the plaintiffs' land; that he had observed both properties many times; that he believed he testified in the companion

case that dirt which had built up through the years was removed from the Huenefeld land and pushed together for their irrigation lateral; that for 3 years he had been using pipe irrigation in this area and it was much lower on the south side than it had been in many years; and that over a period of years he had not observed any water coming from the plaintiffs' property onto his property prior to the time the dirt was taken away from the fence line in 1957. The testimony of this witness is to the effect that there never was any interference on his part, or on the part of any other person, with the drainage from the plaintiffs' land onto the Huenefeld lands.

Wesley Huenefeld testified that he was familiar with the plaintiffs' land; that after a relatively heavy rain storm he observed water in the southwest corner of the plaintiffs' land; and that there was no fill whatsoever that stopped or prevented water coming from the plaintiffs' land across the fence line onto the Charles Huenefeld land.

While we did not set out the testimony of the surveying engineer to any extent in the companion case, it is to the effect that there is a drainageway from the south side of the plaintiffs' land across the Charles Huenefeld land and in a southwesterly direction onto the Carl Huenefeld land; and that the elevation of the Huenefeld land on the north side thereof was generally lower than the land of the plaintiffs on the south side thereof just across the east and west fence line dividing the properties of the parties. This witness' testimony substantially confirms the trial court's judgment in this case and in the companion case, as does the testimony of the surveyor Discoe.

The testimony of Wayne Beech in the companion case, as stated therein, corroborates the testimony of the surveying engineer and another surveyor. Beech testified to a conversation had between the United States soil conservationist, Dwight Pumphrey, and Charles

Huenefeld in which Pumphrey and Beech were concerned with drainage from the north and what would happen to it if a fill were put in where planned to permit an irrigation lateral to run along the north side of the defendants' land. Beech was assured by Huenefeld that that drainage would be protected. Beech further testified that he would not have done this work if this promise had not been made.

The pertinent assignment of error is that the judgment of the trial court is contrary to the evidence and to the law.

This case is for trial de novo in this court.

The parties agreed that the trial court view the premises of the parties here involved. In view thereof the following has application: The trial court is required to consider any competent and relevant facts revealed by a view of the premises as evidence in the case, and a duty is imposed on this court on review of findings made by the trial court to give consideration to the fact that the trial court did view the premises; provided, that the record contains competent evidence to support the findings. See, Town of Everett v. Teigeler, 162 Neb. 769, 77 N. W. 2d 467; Mader v. Mettenbrink, 159 Neb. 118, 65 N. W. 2d 334; Walla v. Oak Creek Township, 167 Neb. 225, 92 N. W. 2d 542.

The following are applicable. In McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912, this court held: "It is the duty of those who build structures across natural drainways to provide for the natural passage through such obstruction of all waters which may be reasonably anticipated to drain there. This is a continuing duty. * * * Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale, or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors."

"For such an injury injunction is the proper remedy, and equity looks to the nature of the injury inflicted,

together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief." Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129. See, also, McGill v. Card-Adams Co., *supra*.

There are many cases in this jurisdiction holding the same as the above-cited cases.

It will be noted that the evidence in the instant case is in conflict. This being true, the following rule is applicable. "When the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Stohlmann v. Stohlmann, 168 Neb. 401, 96 N. W. 2d 40. See, also, Ross v. Ross, 174 Neb. 795, 119 N. W. 2d 495.

The plaintiffs cross-appealed, contending that they are entitled to have the fence line determined in accordance with the United States government survey, and that all parties be required to have the fence placed on the true division line.

The issue raised by the plaintiffs in their cross-appeal as above stated is not pertinent to the cause of action pleaded by the plaintiffs in this case. This is an injunction action relating to drainage from the respective lands of the parties and not a case wherein boundary lines are involved. Therefore, the plaintiffs' cross-appeal is denied.

The judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.